# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT JACKSON
## Assigned on Briefs August 2, 2011

## STATE OF TENNESSEE v. LEONARD BRAKEFIELD

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-06642     Chris Craft, Judge**

---

**No. W2010-02420-CCA-R3-CD  - Filed December 13, 2011**

---

A Shelby County jury convicted the Defendant, Leonard Brakefield, of driving under the influence of an intoxicant ("DUI"), fourth offense, and refusal to submit to a blood alcohol test ("BAC"). On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction for DUI, fourth offense. After a thorough review of the record and relevant authorities, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Tony N. Brayton, Memphis, Tennessee, for the Appellant, Leonard Brakefield.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; Edith Sellers, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's stop and subsequent DUI arrest, which occurred on October 17, 2008. A Shelby County grand jury indicted the Defendant for DUI, fourth offense, reckless driving[1], and refusal to submit to a blood alcohol test. At the Defendant's jury trial on the DUI charge, the parties presented the following evidence:

---

[1]Before trial, the State entered a nolle prosequi on the reckless driving charge.

Markeseo Jackson, a Memphis Police Department officer, testified that at 9:00 p.m. on the evening of October 17, 2008, he responded to a call that someone was passed out behind the wheel of a car on an expressway. After arriving at the scene, the officer observed a red pickup truck blocking traffic because it was parked halfway on the eastbound lane of the Bill Morris Parkway with the remainder of the car on the shoulder. The Defendant was "slumped over" in the driver seat of the car with the engine running. Officer Jackson attempted unsuccessfully to wake the Defendant. Initially, the officer knocked on the window, and then he opened the car door and shook the Defendant. Officers called an ambulance after about thirty seconds of trying to wake the Defendant with no response. After approximately five minutes, the Defendant finally woke up.

Officer Jackson testified that he asked the Defendant to get out of his vehicle to wait for the ambulance to arrive. Officer Jackson could smell a strong odor of intoxicants on the Defendant's breath, and he said that "it was apparent" the Defendant "had been drinking." Officer Jackson also noted that the Defendant's eyes were glossy. The Defendant admitted that he had consumed "three or four beers." After emergency personnel attended to the Defendant, Officer Jackson put the Defendant in the back of his police car to wait for a DUI officer, Officer Copley, to report to the scene. Once Officer Copley arrived, they transported the Defendant away from the roadway to a "shopping center area" that was a "safe location" to conduct field sobriety tasks. After the Defendant spoke with Officer Copley, the Defendant was arrested and transported to jail.

Officer Jackson testified that, based on his training, education, and experience, he concluded that the Defendant was under the influence of intoxicants. Officer Jackson said, "I mean, anybody could see plainly [the Defendant] was under the influence."

Alfonzo Webber, a Memphis Police Department officer, testified that he responded to a call about a driver asleep at the wheel of a vehicle. Upon arrival, Officer Webber observed a vehicle running, partially in the roadway, with the Defendant asleep at the wheel. He knocked on the car windows in an attempt to awaken the Defendant without success. An ambulance arrived and the paramedics assisted in awakening the Defendant. When the Defendant did finally awake, Officer Webber described the Defendant as "[a] tad out of sorts."

At some point, Officer Webber requested the Defendant exit his vehicle, after which he walked the Defendant back to the police car. During this interaction, Officer Webber smelled the odor of alcohol, and he noticed that the Defendant swayed and that the Defendant's speech was incoherent. Based upon this, Officer Webber decided to administer two field sobriety tasks. When questioned, the Defendant denied having any physical problem that would interfere with the Defendant's ability to perform the tasks. The

Defendant showed indicators of impairment on both tasks, so Officer Webster requested a DUI officer report to the scene. Officer Webber testified that, based upon his experience and observations of the Defendant, he believed the Defendant was under the influence to the extent of impairing the Defendant's ability to operate a motor vehicle.

Brent McKinness, a Memphis Fire Department emergency medical technician, testified that he responded to the scene and found officers attempting to wake up the Defendant, who was seated in a pickup truck. McKinness took over and attempted to wake the Defendant in order to assess his well-being. After shaking the Defendant for several minutes, McKinness was able to awaken the Defendant, who initially refused any type of medical assessment. McKinness said that he was eventually able to convince the Defendant to allow McKinness to take the Defendant's vital signs, which were normal. Through his interaction with the Defendant, McKinness confirmed that the Defendant had no obvious injuries and could answer questions. McKinness could smell alcohol on the Defendant and described the Defendant as unsteady and "agitated at first." McKinness also said that, after he " reason[ed] with him a little bit" the Defendant consented to a medical assessment. The Defendant refused any treatment or transportation, so McKinness turned the Defendant over to the police officers. Based upon McKinness's observations of the Defendant, he believed the Defendant to have consumed alcohol that night.

Flanning Glover, III, a Memphis Fire Department emergency medical technician, testified to the course of the events occurring at the scene consistent with McKinness's testimony. Based upon Glover's observations and interaction with the Defendant that night, Glover believed the Defendant to be under the influence of an intoxicant.

Barry Copley, a Memphis Police Department DUI officer, testified that, in addition to his DUI training in police academy, once assigned to the DUI squad, he attended a specialized training for DUI stops. Officer Copley estimated that he has participated in thousands of DUI arrests during his thirty-two year police career. Officer Copley recalled that he responded to a request for a DUI officer on October 17, 2008, involving the Defendant. Officer Copley met the officers and the Defendant in a shopping center parking lot near where the police found the Defendant in his vehicle. Officer Copley explained that he selected this location because it was an ideal situation, "flat, [ ] lines on it, [ ]well lit, . . . dry, [and] no traffic." Officer Copley approached the Defendant and explained his normal procedure, which is to offer the opportunity to do field sobriety tasks. The Defendant declined and said that he had "circulation problems." Officer Copley placed the Defendant in his squad car and continued to talk with the Defendant, explaining that, as an alternative to the field sobriety tasks, the officer could administer some verbal tests. Initially, the Defendant agreed but shortly thereafter changed his mind. Officer Copley then read the Defendant the implied consent form, which explained the consequence of refusing a breath

test.  The Defendant refused to take a breath test.

The State then offered, and the trial court admitted, the videotape recording of Officer Copley's interaction with the Defendant.  The video recording was consistent with Officer Copley's testimony.  It showed the Defendant standing in front of the vehicle refusing to do field sobriety tasks and then showed the Defendant inside the patrol car refusing verbal tests and the breath test.

After the State played the videotape for the jury, Officer Copley testified that he observed a strong odor of intoxicant on the Defendant and described the Defendant's demeanor as "polite and cooperative."  Officer Copley said that the Defendant did display some unusual conduct while seated in the back of the police car.  He said "[the Defendant] was holding his hands up looking at them and kind of moving them from side to side and seemed like part of the time he kind of, you know, shook his head."

Based upon his observations of the Defendant and experience, Officer Copley testified that he believed the Defendant to be impaired and should not have been operating a vehicle.  Officer Copley identified the field sobriety report he filled out, wherein he noted that the Defendant had an odor of intoxicant, his eyes were blood shot and watery, and the effects of the alcohol were "obvious."

The Defendant testified that, at the time of this stop, he worked at New Breed Logistics.  Because it was a "start-up company," he was working long hours.  On October 17, 2008, he left work early to visit family.  At approximately 9:00 p.m., he began driving home.  About a half a mile before the exit he needed, which was two miles from his house, he felt himself getting sleepy, and he began "nodding off."  The Defendant recalled that, as he exited the highway, there was a designated emergency area, so he pulled over into this area, put his truck in park, initiated the hazard light and laid his head on the steering wheel.  He explained that he did this to prevent harming himself or other motorists on the road.

The Defendant testified that "all of a sudden" he heard someone "pounding" on his truck window.  When the Defendant looked up, he saw a police officer, who ordered him to roll down his window.  The Defendant denied that officers woke him by physically shaking him and said his truck door was not open when he awoke.  The Defendant said that he rolled down his window and the officer asked if he was "okay."  The Defendant told the officer he was "okay" and explained why he was parked in the designated emergency area.  The Defendant said that the officer refused to listen to the Defendant's explanation.

The Defendant testified that the officer ordered him out of his truck and placed him in the back of a police car.  The Defendant denied that he performed any field sobriety tasks.

-4-

The Defendant explained that the officer asked him to perform a field sobriety task but that he would not agree to it. In the back of the patrol car, the Defendant gave the officer information and his ID. About an hour later, the officer drove the Defendant to a Hampton Inn Hotel where they met a DUI officer.

The Defendant denied seeing a paramedic at any point. The Defendant said that, once he woke up, the officer told the Defendant that a paramedic had been present but had left. The Defendant said he told police that he did not call paramedics or need a paramedic. The Defendant identified his signature at the bottom of the paramedics report, but he explained that it was a document police officers provided to him to refuse transportation. The Defendant denied drinking any alcohol that night.

Based upon this evidence, the jury convicted the Defendant of DUI. In the second phase of the trial, as to the Defendant's charge of refusing a BAC while driving on a revoked license for a prior DUI conviction, the following evidence was presented: Diane Joyner, a Tennessee Department of Safety employee, testified that she was the designated keeper of records for the Memphis Reinstatement Office. Ms. Joyner verified that on October 17, 2008, the Defendant's driver's license was revoked for a DUI conviction. Ms. Joyner testified that the Defendant had three prior DUI convictions for driving while intoxicated on February 22, 1999, January 17, 2004, and August 7, 2004.

Based upon this evidence, the jury found the Defendant guilty of refusal to submit to an alcohol test while driving on a revoked license. Additionally, the jury found the Defendant had previously been convicted of three DUIs, allowing for an enhanced sentence. For his DUI, fourth offense conviction, the trial court sentenced the Defendant to two years in the workhouse, suspended after service of 150 days, and imposed a fine of $3,000. For refusing to submit to the BAC, the trial court sentenced the Defendant to thirty days in the workhouse, to be served consecutively to his two-year sentence for DUI, fourth offense.

## II. Analysis

On appeal, the Defendant contends that the evidence presented is insufficient to sustain his DUI conviction because the State did not establish that he was under the influence to such a degree that he was unable to safely operate a vehicle. The Defendant asserts that his conviction is wrongfully based on "the conclusory statements of police officers and EMTs[,]" and no one witnessed him drive his truck. The State counters that the evidence proved that the Defendant exercised physical control over his vehicle while intoxicated.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State,

"any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant

bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Tennessee Code Annotated section 55-10-401(a)(1) (2009), the DUI statute, provides, in pertinent part, that "[i]t is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways of the state . . . while . . . [u]nder the influence of any intoxicant[.]" The statute imposes strict liability without reference to a culpable mental state. *See State v. Turner*, 953 S.W.2d 213, 215 (Tenn. Crim. App. 1996). While it is a determination to be made by the trier of fact, the testimony of the arresting officer may be sufficient, alone, to establish the Defendant's intoxication. *See State v. Vasser*, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993).

The Defendant contends that the State's evidence failed to establish that he was under the influence to such a degree that he was unable to safely operate a vehicle. Officer Jackson, however, testified that he felt that it was "apparent" the Defendant was under the influence of alcohol, considering, among other things, the Defendant's admission he had consumed three to four beers, the odor of alcohol emanating from him, and his "glossy" eyes. As previously stated, the officer's testimony alone is sufficient to establish the Defendant's intoxication. *Vasser*, 870 S.W.2d at 544. In addition to the arresting officer's testimony, all four of the other witnesses testified to the Defendant's impairment. Further, the jury viewed the videotape of the Defendant refusing the field sobriety tasks. From this evidence, a rational trier of fact could conclude that the Defendant was driving while under the influence of an intoxicant.

Our review of the evidence, including the videotape, confirms the jury's finding. The evidence proved that the Defendant smelled strongly of an intoxicant. He admitted that he had consumed three or four alcoholic beverages before driving. Police officers found the Defendant passed out behind the wheel of a vehicle with its engine running, partially blocking the roadway. The Defendant also showed indicators of impairment on both of the field sobriety tasks Officer Webber conducted.

The Defendant also contends that his conviction cannot stand because no witness actually observed him driving. In *State v. Lawrence*, our Supreme Court interpreted the meaning of the words "physical control" in Tennessee Code Annotated section 55-10-401(a). 849 S.W.2d 761, 765-66. In the opinion, the Court stated, "It is our opinion that the Legislature, in making it a crime to be in physical control of an automobile while under the influence of an intoxicant, 'intended to enable the drunken driver to be apprehended before he strikes.'" *Id.* at 765 (quoting *Hughes v. State*, 535 P.2d 1023, 1024 (Okla. 1975)). In the case under submission, the Defendant was seated in the driver's seat of his vehicle while the vehicle was running. The vehicle was stopped partially in the roadway, blocking the flow

of traffic. Moreover, the Defendant admitted that he had driven his vehicle to within two miles of his home before stopping to take a nap. Thus, we conclude that the Defendant was clearly in physical control of his vehicle when the officers approached him. The Defendant is not entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and the applicable law, we conclude the evidence is sufficient to support the Defendant's conviction. We, therefore, affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE